Please be seated. Good morning, everyone. Here we are live and in person for the first time in a long time, so it's nice to be here and to see all of you and have in-person oral argument. Our panel this morning will be hearing five cases. We plan to take a short break after the second one, so counsel who are arguing the last three cases, please be advised that that will happen. Our first case this morning is Wilkins v. City of Tulsa, number 21-5052. Counsel, you may proceed. Thank you. My name is Bob Blakemore. I represent the appellant in this case, Mr. Ira Wilkins. This case involves a use of force which we claim is excessive use of force in violation of Mr. Wilkins' Fourth Amendment rights and specifically on February 5th, 2017, the defendant, police officers, Tulsa police officers, Rangel, Mortenson, and Emberton, who had already restrained Mr. Wilkins with handcuffs, violently and forcefully took him to the ground. When exactly was he handcuffed? Judge, after he exited the vehicle. Immediately after he got out of the car? It was it was pretty close to immediately. I've seen the video, I just wanted to know. Yes, pretty close to immediately after. So after going back to the actual use of force itself, during all pertinent time times when the uses of force in question were exercised, deployed, he was subdued by by handcuffs. Behind his back? Behind his back, yes. So after he's taken to the ground, which is the training officer, Mortenson, on the command of his supervisor, field training officer, Rangel, sprayed Mr. Wilkins in the face with pepper spray. So that's the second use of force that we say was excessive. At the time of this use of pepper spray, Mr. Wilkins was not resisting, posing no I just ask you at this point, you just said he was not resisting. I understand that's that's your position. The officers say that he was resisting in some fashion. Does does this really come down to how we view the video? It's partially the video, your Honor, and then partially there's a there's an issue of disputed and contradictory testimony. So one of the one of the chief errors that we cite with respect to the district court's order is there is a declaration that was sworn to by our client that's not mentioned at all in the the order granting summary judgment. And pertinently, what Mr. Wilkins swears to in that declaration is that at no time was he resisting the search, including the search of his back pocket, which is what the officers say is the the primary reason for the use of force. That was part of it. But he also said that he was not only resisting, but was tensing up. And in the declaration by Mr. Wilkins, he does not deny that he was tensing up. So don't we have uncontroverted evidence from the defendant that is not Well, to be honest with you, sir, I'm not sure exactly what what is meant by that or how how that's even relevant. But our interpretation. Well, I don't mean to talk over you, but to clarify the question, my understanding is that Officer Wharton said that by tensing up, he was in fact, he says this on the video, quit tensing up. It's making it hard to to, you know, to conduct the search. So it seemed to be fairly obvious that Officer Wharton was saying that by tensing up, it was making it more difficult to reach it in the right rear pocket. Well, I think by saying again, that's my understanding as well, that the tensing up is is the argument is that it's a search. The implication is that he was not tensing to the extent that that was resisting. Related related to that, it's one thing to say is the declaration does and I'm looking at it now. He didn't at any time resist the searching of the person. But is that the same thing as not resisting at all? I mean, couldn't he still have been resisting what the officers were doing, independent of whether it's resisting the search? Because the the declaration says nothing about not resisting at all. And the video does show him moving around on the ground. So does the declaration really do everything that you need it to do? I think it does. I think I think that coupled with the the video, again, we're talking about somebody who and going back to one of the other errors that we cite is the fact that the the court did not apply the will articulate or apply the Graham versus Connor factors. One of those being, of course, the first one being whether the suspect was suspected of committing any serious crime. So he was not. I mean, so he's on he's on the ground. He's subdued by three officers. He's handcuffed. Let's talk about the third of those Graham factors for a minute. Severity of the crime. He wasn't really accused of a crime at all. He wasn't a threat to officers. I guess there's no evidence of guns or anything. The third, Graham said resisting arrest or attempting to flee. We know he wasn't attempting to flee. Right. He was arrested at the moment they put the handcuffs on him, right out of the car before any resisting or wiggling or anything else. So he he was not resisting arrest. It seems to me what he was resisting, if at all, was resisting search. And that, if you take the Graham test literally, is not an authorization for for force. Right. I think the way that the court, and I agree with that, the way that the court applied this, although it's unclear, again, because he didn't the court didn't articulate the the factors. But I think what what the court, the lower court was doing was giving credit to the officer's testimony that because he was resisting their search of the back pocket, they thought he might be. My point is that's, I mean, at most, I mean, I think at most you would have that he was alleged to have, the officers alleged that he resisted search, not arrest. And does, does, do you believe that Graham covers resisting search when it says specifically, as the third point, resisting arrest? No, I don't. And he did, he did not resist arrest. So I think the third factor weighs heavily in our favor as well. I believe, I mean, again, trying to read, as far as what the argument is, is that they're saying that because he was resisting the search, they believe that he might be armed and he was going to somehow grab a weapon out of his back pocket while he's handcuffed. I mean, they don't, they never articulate any reasonable suspicion or probable cause that he was actually armed. And again, we we completely dispute the idea that he ever resisted the search. So what you're left with, if you look at the video, and then you, if you properly apply the summary judgment standard, which we believe the district court did not, in two ways. One, by not giving any consideration to the declaration and then secondly, we believe weighing all the sort of uncertain evidence where things are not 100% clear from the video in favor of the the officers, which is obviously turning, that's turning the summary judgment standard on its head, in our opinion, and was, was erroneous. Didn't the officers say that Mr. Wilkins, after he'd been taken to the ground, was trying to stand up again? They say that. There's no, there's no evidence to support that from the video and again... Well, is it your view that the, that the video is clear on that point? No, but I'm moving around. I, I, I think once, once he's taken to the ground, the video, it's a little hard to tell what's going on. Well, it is, and we could see that, but it's, he's on the ground, he's subdued by handcuffs, he has three officers on him, and then pretty quickly, without any warning, in that process, after, our belief is that the evidence supports that he's subdued, then the pepper spray is deployed. I mean, that's clearly, that's clearly excessive force. Well, just, just getting back to my question, I'm just trying to compare the declaration to what the officers are saying, and if they said he tried to stand up, I didn't see anything in the declaration to rebut that. Was the declaration prepared after their deposition testimony? Yes. But it hasn't, they, they did not, the defendants, I believe, did not even take Mr. Wilkins' deposition, and so we provided that, that declaration. Really, the, the purpose of that was to sort of fill in the, the gaps of the things that are maybe not apparent from the video. And that are contrary to what's being said by the, by the officers. The, but during this entire, again, reading the, the evidence of the light most favorable to, to my client, during this entire episode, all of those factors under Graham weigh heavily in our favor, and it's clearly established, and we, you know, we cite numerous cases that in an instance where you're not suspected of committing a serious crime, you're not posing any immediate threat, there's really no evidence. I take it you're, you're not requesting for your own summary judgment, your own appeal, you're simply saying that there's enough disputed fact that you ought to go to trial, is that right? Yes, sir. Yeah, and that, and that it was error for, it was error to grant summary judgment, it was error to, it was error for the judge to grant qualified immunity. So you don't need to argue that there's no evidence he wasn't resisting, that he was resisting arrest, you simply have to argue that that was a disputed fact. Correct, and we, and I, and I, I think we put enough evidence before the court that we have a genuine disputed fact on that. Mr. McBorn, can I, I don't want to eat up your rebuttal time, but I, I was interested in the issue of municipal liability. The defendant argued for affirmance on alternative ground, that there was no unconstitutional policy or custom, even if Officer Morton had used excessive force, you didn't file a reply brief, and under Hassan versus AIG, Eaton versus Pacheco, haven't we said that the failure to address an alternative argument for affirmance would waive any non-obvious defects in the appellee's argument, and I'm, and I'm, so I'm a little concerned that even if you prevail on individual liability against Officer Morton, you may have waived any non-obvious defects with regard to municipal liability. Well, we do, we do have, we do have evidence of a pattern of misconduct and what we think are other instances of excessive force by the police. Obviously, the court only looked at the issue of whether there was an underlying violation. That was the, that was the sole basis of the summary judgment on the municipal liability claim, and we believe, should the court decide to consider that, I think we put enough in front of the court that that summary judgment should be reversed. Thank you, counsel. Thank you. Good morning. May it please the court, counsel. My name is Michelle McGrew. I'm a senior assistant city attorney for the City of Tulsa. I represent the City of Tulsa and police officers Will Mortenson, Angela Emberton, and Adele Reingett. And we request that this court affirm the district court's finding that these officers are entitled to the complete defense of qualified immunity and that the City of Tulsa is entitled to summary judgment because Mr. Wilkins did not establish that his constitutional, his Fourth Amendment constitutional right, were violated. The district court, there are four issues. Is that your only argument for the City of Tulsa being a summary, granted summary judgment, was that that that that you're not relying on the fact that he, that the plaintiff didn't respond in a reply brief? Well, he didn't respond because he didn't put any evidence in. He didn't identify what policy practice or custom from the city was the moving force behind any alleged constitutional violation, which first he can't prove, and that he cannot prove in under any way under Monell of municipal liability against the city. But he, but he did argue in his opening brief at some length with regard to other incidents that he said were comparable. Well, the use of force and excessive force are two different things. What he put before the court were hand cherry-picked facts from about six or seven instances of officers using force, and in this case O.C. pepper spray. Now, and not one of those instances was the officer found to be using excessive force by a court or anybody else. Well, I have two questions. One is even if those situations were different, he did put in evidence or in argument in his opening brief that there were these other incidents that would have bound to an unconstitutional custom under Monell. Would you grant that, even if they were different? No, it has to be a tortuous, a pattern of tortious conduct, and there's just because an officer uses force that doesn't mean it's excessive. It has to be a pattern of excessive force, and that's not before the court. All right. Now, here's my question. In your motion for summary judgment and in your reply brief, the defendant, or the plaintiff, did argue that there were these other unconstitutional incidents, and I did not see in your reply brief, and that was in his response brief, in his summary judgment briefing in district court, in your reply brief, I didn't see where you would ever argue as you do now in your opening brief, in your response brief, that those incidents were different. So aren't you, to the extent that you're arguing, that there was no unconstitutional policy or custom because those situations were different or, based on what you're saying now, didn't even involve excessive force? That is not something that you put in your reply brief in district court, correct? No, I disagree. I think I did, and I think that in every one of those instances that he talked about in his reply brief, he misstated the facts. He stated that the person wasn't resisting when in fact they were, that there was no reason for the pepper spray. And there was in every single instance, and I went through every single instance in my reply brief as to why a force was reasonable and necessary and an objective use of forces, which is what the court requires. And he has not disputed a single material fact in this case, and I think that the declaration, because it doesn't meet the requirements of federal rule 56c-4. Well, where does 56c-4 say that you have to say in your declaration or affidavit that you have personal knowledge? After all, doesn't the actual rule, I think it's 601, say that every person is deemed competent unless these rules provide otherwise? And in Janney v. Gibbs, didn't our court specifically say that you don't have to put in a declaration when you have what they called a first-hand narrative, that you have personal knowledge. Obviously, Mr. Wilkins had personal knowledge. He was standing there. Can't we reasonably infer personal knowledge? And my second argument is that even if you assume it meets the standards of 56c, it doesn't dispute the facts because it's all conclusory language saying I didn't resist. He doesn't specifically address the fact that he tensed his muscles, which may not sound like resistance to somebody who's not a trained police officer, but resisting and tensing your muscles makes it more difficult to conduct a legal search. Wouldn't that be a matter then for trial? No, because he didn't dispute that fact. If you can't dispute it in the summary judgment, there doesn't need to waste the time of a trial. That's the point of a summary judgment. If he can't bring the facts to respond to the motion for summary judgment or on appeal, then he's not going to be able to bring him at trial. And the reason we didn't take his deposition because it was in the middle of COVID, he's in a federal penitentiary and no visitors were allowed and we just decided it wasn't worth it to try to set it up via Zoom. Before we leave the municipal liability issue, I take it though you would agree that the district court never reached the policy or practice question. It simply granted summary judgment because it also said that there was no constitutional violation under prong one. Do you agree with that? I do agree with that. All right. Because you don't get to the second until you reach the first that there is a constitutional violation. All right. So in terms of reviewing what the district court did, district court didn't do anything on policy or custom. He didn't because he said he... He didn't. Right. Okay. He did not. The other thing the district court really didn't do was to apply the grant test. There was nothing in the district court's order saying here are the three points and here's how I rule. A, B, and C. He didn't do that. Because what the overall point of Graham was weighing of the nature and quality of the intrusion of the Fourth Amendment right versus the countervailing government rights, which is in this case is officer safety. And that's exactly what the court did and there's nowhere even in the Graham versus Connor ruling where it says you have to go down one, two, and three. I believe there's a... I don't have the site so I could be wrong on this, but I thought that we had a case that said you must consider the Graham factors. I may be wrong. And if you look at the courts, it did. It just didn't say one, two, and three. But what the court did say was officer safety. The court, the Tenth Circuit and the United States Supreme Court has already recognized that traffic stops are inherently dangerous to police officers. But there was no evidence whatsoever that the officers had any objective, reasonable basis to believe he was armed. Well, first of all, I disagree. I think they do until they could be able to conduct a search and when you have... Why? Why did they objectively have a reasonable belief, reasonable belief, not just a possible belief, that he was armed? Because he's resisting with handcuffs and that doesn't mean he can't resist just because you're handcuffed. He's grabbing an officer's hands, his fingers. He's tensing his muscles to prevent the search of the right rear pocket. So every time you believe that every time a person is not 100% compliant with arrest, that it's a legitimate inference we could rule for officers to say, ah, you must be armed. I think that's a reasonable factor, especially when someone is parked at 12 30 at night in a auto dealership asleep with a car on. That's what he's committing a crime. There's a reasonable suspicion that he's committing a crime. The officers had every right to take him out of the vehicle, handcuff him and search him. Why is that a reasonable suspicion that he was committing a crime? Because they all three testified that they smelled the odor of alcoholic beverage. He's asleep with the engine on, the radio blaring. They said that there was a container of alcohol in the car, but in the video it wasn't apparent and nobody ever explained where this mysterious alcohol went. Well, you don't have to have a picture of the alcohol. First of all, a body-worn camera is limited. It doesn't show everything that an officer can see, feel, smell, or experience or even see. It's a dark parking lot. Only one of the officers, field training officer Rangel, was the only one that had a body-worn camera video, which is a fixed camera and it's dark. And especially if you're going hands-on with a suspect, the camera is pressed up against the suspect and you can't see the full picture. But all three officers testified under oath that they smelled the odor of alcoholic beverage. They had a reasonable suspicion that he was armed. And if somebody is resisting and not allowing you to search a right rear pocket until that pocket's been searched, they don't have, they have a reasonable fear that he could be armed. Otherwise, why is he resisting that? Or is he trying to grab the officer's weapon? Could I just ask you this? If Mr. Wilkins was not resisting, and I know you disagree with that, but if Mr. Wilkins was not resisting when he was on the ground, was use of the pepper spray excessive force under the fourth amendment? If that were the case, but that's a hype, that's not what's before the court, because we have, well, is that, so I'm, is that yes? I think it would, it has to be reasonable because he, to, the purpose of using the pepper spray is to neutralize the threat. And the threat is, even though he's on the ground and there are three officers there, he is still moving, he is still preventing them from searching that right rear pocket. And at that point, it doesn't matter what they found later, his declaration said he wasn't resisting search of his pocket. He doesn't say I wasn't, that I allowed him, he doesn't specifically address the facts that we put in or what resistance is. Resistance is tensing your muscles, moving away, not allowing them to get into. Well, that's all he said. He wasn't resisting search in his declaration. Don't we have to accept that for purposes of summary judgment? No, for purposes of summary judgment, you have to, the specific facts that we have put in evidence with sworn deposition testimony. We, I understand that you put in facts, but his, you're arguing we should ignore the declaration, but if we, if we think the declaration was validly filed, you also claim that the, that the statements in it are conclusory, but the statements really aren't conclusory. They're pretty specific. I disagree. I don't think they're specific. It's a conclusion that I, if we'd only put in he, he, what's he, what's he supposed to say? He said he didn't grab someone's hand. Is that not specific? He didn't, he didn't address with, look at all the things that he ignored. He ignored, he didn't say he didn't flex. He didn't say he didn't grab the fingers. Can I, can I stop you? Because I think the colleague is asking you about when, when, uh, when Mr. Wilkins was on the ground, when the three officers were on top of him. So at that point, I don't think until now, anybody on behalf of the defendant has said that he was flexing. He, he's, he's, he's horizontal on the ground. That is true, but he's still, is still grabbing fingers. He is still moving away from the officer. With his hands, he, he is handcuffed behind his back. And he is, he is horizontal. He's laying on the ground with three officers on top of him. And are you saying that he was still with these three officers on top of him laying on the ground, he was still grabbing his right rear pocket? Yes, I'm saying he's trying to grab the officer's fingers. He did say that sworn testimony of Officer Mortensen, while he's on the ground, he is grabbing his fingers and Officer Emberton says he is trying to stand, even though there's three officers on the ground. Does the video show he was trying to stand? No, that's what I'm saying. The video is Officer Rangel is at the head of Mr. Wilkins. And so it doesn't show the whole picture. That's why we have a sworn deposition testimony of the three officers that were there, hands on. And they also didn't controvert, our experts report that he has reviewed cases where suspects were handcuffed behind their back and were still able to access a weapon and fatally injure an officer. So the threat was real. The threat remained throughout this, until the pepper spray was used. It was one second use of pepper spray. It wasn't excessive. He has failed to meet, he's failed to controvert the evidence. It's undisputed that he doesn't talk about any of those facts other than forcefully grabbing the fingers. That's it. Okay. How do you distinguish Perea versus Baca? Where the panel unanimously said that Mr. Perea was, although he was restrained, he was still thrashing and brandishing his crucifix at the officer. Specifically said he was still thrashing. And yet the panel unanimously concluded that it was that it was excessive force, even though he was still thrashing when the officers had had a right to, had already restrained him to spray him at that point. Because the threat is still there. They still have not been able to ascertain whether or not he has a weapon in his right rear pocket. But wasn't that the case in Perea? That's what I'm trying to ask you. Yeah, I do not think so. Because I think that this case is different in that he is committed of a crime. He has not established a Fourth Amendment violation. The officers had objective reason at that time with the facts that they knew is that I haven't been able to search the pocket. This is a man that I believe is intoxicated. There's reasonable suspicion that he is. And until he is searched, the threat is there and he is still defying the officers and not allowing the search. He has not established, if you don't establish a Fourth Amendment violation, then they can't, these officers are entitled to qualified immunity from suit and they're entitled to summary judgment. And the city, if he hasn't proven an underlying Fourth Amendment violation, there is no municipal liability under Monell under Section 1983. Thank you, counsel. Your time is up. I believe there's no rebuttal time. Thank you. I need to grab my mask. Sure. Thank you. Thanks to you both for your arguments this morning. The case will be submitted and counsel are excused.